Good morning, Your Honors. My name is Kyle Gray. I'm here representing Fortis Insurance Company in this case. On its face, it looks like a simple insurance dispute, but what this case is really about is that ever-interesting doctrine of ancillary jurisdiction. And I'm sure I don't have to tell the Court how important it is in our system. It sounds to me as I read it, your client doesn't like to pay claims. Your Honor, no insurance company likes to pay claims. But this case is really not about claims being paid or not being paid. It's about what court should adjudicate that if … Well, Counsel, you had the opportunity to remove the case on the basis of diversity jurisdiction at the time it was filed, and you didn't do that, correct? I believe that is correct, Your Honor. I was not on the case at that time, but I understand that decision. Well, I don't mean you personally. I meant your client did. Yes. And just from my own – I'm speaking only for myself – it appears to me that this is just a very fancy way to try to remove the case outside the time for removing the case. Well, Your Honor, that's not the way we look at it. It – what this is about is essentially the Kekkonen case, the U.S. Supreme Court case in 1994, where a unanimous Supreme Court, I think, fed up with dealing with the split in the circuits. The courts were all over the place on when you have a settlement agreement, who should enforce it. And in that Kekkonen case, Justice Scalia, writing for the unanimous court, said, we're going to stop this. If you put in your settlement agreement, if the court says it will retain jurisdiction to enforce the settlement agreement, that's it. It goes to Federal law. Well, no one quarrels with that proposition. The question here is what was included in the settlement agreement. And a question along those lines, the policy that was enforced at the time of the 1998 socket replacement, did that have to be renewed again by the time the 2002 issues came to pass? In other words, was there a renewal of the policy, or was it a policy that was in effect for a 5- or a 10-year term? You know, I honestly do not know the answer to that question, Your Honor. Perhaps Mr. Cousins does. What I know is the answer is yes. Well, let me follow through with that, though, because assuming that there was a renewal of the policy, it's just as if a brand-new insurer came into the picture. It's just a whole new ballgame. I don't understand why it would still be covered by the settlement agreement if it's a renewed policy. If that were true, Your Honor, then we would be entitled in either State or Federal court to say, no, our policy doesn't cover socket replacement. But the understanding among the parties is that whatever policy she had, however the terms changed going into the future, that Fortas would not deny coverage or socket claims as long as they were medically necessary.  So the understanding of the parties, I don't know what you're referring to. The settlement agreement, Your Honor. Well, the settlement agreement on its own terms doesn't say what you just said. Well, I think it – I will admit it's not the most wonderfully drafted. We're all like that, Your Honor. We tend to draft these things fairly quickly. But if you'll take a look at it, and on – it's Excerpt of the Record 38 I'm looking at. It says – I looked at it before. But go ahead. Tell me the language in it. Well, it's in the present tense. It says, Fortas Insurance Company agrees and acknowledges that John and Bonnie Lurang's health insurance policy, blah, blah, provides coverage for medically necessary replacement sockets. Now, Judge Craigerson can tell you I've been up here before and trying to interpret CERCLA. CERCLA is much harder to deal with than the language in this contract. But when CERCLA was interpreted – is to be understood. But that's – but the only actual settlement that's discussed in the agreement is the claims that could have been or actually were asserted in the lawsuit. And the lawsuit wasn't and couldn't have been about something that hadn't happened for several years. Well, Your Honor, that's – actually, that – then the language in the settlement agreement makes no sense. Because if you go through and look at other parts of it, it's binding on heirs, representatives, successors, and assigns. There's no need to do that if there's nothing going forward. Sure there is if they sold it the next day before they cut a check. Well, then there were all of these other matters in here talking in terms of the future that waiver by any party of one provision would not waive all of the provisions, the remaining provisions. What's to remain if the only thing was payment of $150,000? It really doesn't make any sense. Plus, when you look at the conduct of the parties, what Fortas did immediately after they entered into this agreement was they put into the notes to self page on their computer saying that – I'll read the language. This is on Excerpt of the Record 43. Per legal. And then they list all those L codes that are in the settlement agreement are not to be denied as excluded. See this COR for further information. So clearly Fortas went right out, put it in their computer system that in the future these matters would be paid. And, in fact, it's clear that, too, is how the Loraines read this and have said so in several of their briefs. I'll read from page 21 of Fortas' opening brief. We're quoting what the Loraines said to the district court in the state, which is that the settlement agreement was, quote, its agreement the medical expenses were covered and benefits for them would be paid. So I said that it clearly was the understanding of both parties that what this was, that in the future Fortas would pay these kind of claims. And if it screwed up, which clearly it did here, that if the parties needed to, if they couldn't settle it themselves, they would go to federal court and ask one or the other, ask to have the settlement agreement enforced. And the language in Judge Anderson's order clearly says that questions of enforcement of the settlement agreement are retained, jurisdictionally retained by the court. And what happened in this case was precisely, I believe, what Justice Scalia wanted to be avoided going forward, which is that you would have confusion. Judge Baugh down in the state court was very confused about did he have jurisdiction in this case or not, and then entered an order that sort of assumed some things. And then Judge Shandstrom, the federal judge, took those and assumed those into his order to get to the point where they said, well, this isn't really enforcing the settlement agreement. And what they missed is, is that the persons who were asking for enforcement of the settlement agreement, Fortas Insurance, filed a motion to enforce the settlement agreement, which clearly is within the language of the retention of jurisdiction. And the reason we did that is, is because not that the – well, let me say, when it first started out, it looked like they were moving to enforce the settlement agreement, and in fact, this is what they said in one of their briefs. But that doesn't make – that isn't really the basis of the claim. The claim is that the insurance policy in effect in 2002 covers their claim. If they didn't have a policy in 2002, it wouldn't matter what the settlement agreement had said in 1999 if they had, for example, changed insurance companies. Sure. The only possible basis for getting money to cover the claim, that's distinct from the state law consumer protection issues and so forth, but the only basis for getting the claims paid is the underlying policy in existence in 2002. Yes, but the parties contractually agreed what the policy would mean going forward. And just for these parties. That's – it's not that they could just say, we're entering into a specific  So you're saying the fact that they had a meeting of the minds on the meaning of their policy means that every time that meaning comes up, it's an enforcement of the settlement agreement. Yes, Your Honor. In effect. And that's – that's the bargain that – So 15 years later or 20 years later, that – If Fortas were to deny something as medically unnecessary, yes, that goes to the Federal Court, retaining exclusive jurisdiction. And the reason is it's the settlement agreement that gives the contract, the other contract, the policy, its meaning. Because if you read the way the policies are written, it's not at all clear whether replacement sockets are covered. That's why, first of all – If the settlement agreement's enforced, if that point that you're making now, the retention of jurisdiction, is ambiguous, why isn't the district court that actually signed off on it in the best position to determine what the court meant by the limited purpose of enforcing the 1999 agreement? I think the court would be in a good position to do that. The problem is the court went at this as a jurisdictional issue and said he lacked the jurisdiction to decide this case based on what Judge Baugh had said in the State Supreme Court, which is, oh, well, no one here is asking for damages based on 1999 backwards, which is the date of the settlement agreement. The problem with that is Judge Baugh, although as much as we appreciate his order, is not the final say in Montana. It's now on appeal in the Montana Supreme Court, and it's as likely as not that the Supreme Court could say, no, we think you can ask for all those old damages. And that clearly would be in violation of the settlement agreement. Plus the other ---- But they're not asking for those damages. They're asking for damages related to 2002. Well, if you read their complaint, Your Honor, and then their briefs going forward, what they're asking to do is to look at that as a course of conduct. So they want ---- For a different purpose, though, not to get the damages, the contractual damages, for the purpose of showing your state of mind under the Consumer Protection Laws. Then why did they appeal Judge Baugh's order, which said precisely that? That's the problem, is we've got two courts in two different systems in our Federal system that are interpreting the same settlement agreement, and which is what the Caconan case was supposed to stop. And this Court's case in Flanagan said the same thing. It's important as a matter of Federal-State policy to know which court has jurisdiction over a given issue. And the bargain that my client struck was that in return for paying a good sum of money for a case where they, again, had agreed to pay for the socket, it's not that these have not all been paid for. They have. What we're talking about is timing issues that, you know, that happens when you have a big company. Mistakes are made. But it got fixed. And part of what my client wanted in the future was to be able to say, yes, we've settled this. You get this if it's medically necessary. And that's why when they started, when Lorang's counsel started talking about, well, we're going to get this whole course of conduct damages, plus the other thing that they're asking for is damages based upon future socket replacement that Mrs. Lorang will need. And so they're building a bunch of assumptions into there, and they just want the money. And what that takes from my client is the clear agreement in the settlement that medical necessity will have to be determined for any medical, for any socket replacement. And so what they're asking for is inconsistent by saying, no, we're going to take a bunch of money and assume all these things in the future. They're taking away my client's right to assess medical necessity. They're taking away my client's right to see that premiums have been paid up. All of those things which come into a question of breach of contract, and it just happens to be it's breach of the settlement agreement now rather than breach of the policy, because those are the terms that the parties agreed to. And to take this language of the settlement agreement, which clearly says, it uses the present tense, that Mrs. Lorang's policy provides coverage for medically necessary replacement sockets. And that's about as future-looking as you can get. And then when you see what Fortas did next, they put the information in their computer. And then when they mistakenly denied the claim, the next thing that happened was Mr. Daler, on behalf of Fortas, went to the claims specialist and says, no, you can't deny this claim. And here's what he said, and this is on page 46 of the record. Therefore, in the future, he says, Sharon, there is a settlement agreement and a release in this case. It states in paragraph 1C that Fortas agrees that the above-reference policy provides coverage for medically necessary replacement sockets. And then he goes on to say, therefore, in the future, we must pay for these replacement parts when claims are made under this policy, blah, blah, if the replacements are medically necessary. That was the understanding of the parties going forward. They would Mrs. Lorang would have her doctors decide whether she needed a socket. She would make a claim. Hopefully, it would be paid. If it wasn't, Mr. Harris or Mr. Cousins could do precisely what they did, is send a letter out and say, wait a minute. But what they failed to do in the letter they sent here was to mention the settlement agreement. But once my client figured out the facts, they paid. And they've now got another note in their computer screen, pay in the future, pay in the future. That was clearly the understanding of the parties. And that's why we think, because of the exclusiveness provision of ancillary jurisdiction that this Court put into effect in Flanagan, that there's really no question that this should be decided in the Federal court. And unfortunately, Judge Shandstrom looked at jurisdiction rather than at the underlying questions. And so it needs to go back to him so we can actually interpret the contract. So what's wrong with the State court system? There's nothing wrong with the State court system, Your Honor. It's just that when you're talking about subject matter jurisdiction, which can and should be raised at any time, this should really be in the Federal court because it was entered in the Federal court to begin with. Anything else? Time's up. It is indeed. Thank you, Your Honors. My name is Larry Cousins. I'm happy to be here today representing John and Bonnie Lorraine. Some things came up that I would like to try to straighten out. And I'll try to speak up. Sorry, Judge. The State court case is on appeal.  It's on appeal from a summary judgment in favor of four to five. And the State court has supported us on the grounds that none of the previous denials were admissible and therefore there was no evidence to support our repudiation claim. And we'll see what happens on that appeal. We're, you know, that's what the State court did. It didn't have anything to do with agreeing or disagreeing with Judge Shandstrom's decision saying I know what I intended to do with this order and this wasn't it. But the court has focused on what the only issue really is presented by this appeal. And that is what did the parties agree to in 1999? The fact is they agreed that Fortas would pay the existing claim and Fortas did pay it. They agreed that Fortas would pay an additional sum for damages and Fortas did pay it. And Fortas acknowledged that there was coverage under that policy for these claims. Is that policy had to be renewed or was that a policy that covered a span of years that encompassed both 1998 and 2002? From time to time Fortas changes the language of their policies. It does that unilaterally. It's not like I have to sign an application and get a new policy from time to time that will send out a notice that says here's a new policy that replaces the old policy under Montana law. They can't change anything in that manner unless they give specific notice of this specific change and say, for instance, this won't be covered that was covered before. But the period that your clients paid for, is it paid for month to month or year to year or? I can't tell you whether it's quarterly or monthly, but they pay premiums on an ongoing basis. So at the time of the settlement in 1999, whatever they had paid for did not encompass 2002. That required them to pay up some period of times, number of times. And you're right. Obviously they would have no rights against Fortas if they didn't continue to pay, and I think it's a monthly basis, the premiums to have that insurance policy. They're still in policy number 3202038. I believe that's true. But I believe that there has been one change in the language. That change actually went back to earlier language that they had, which makes it even more clear that there's coverage. But it doesn't matter because they can't unilaterally change the coverage by sending out amendments to the policy. Mr. Cousins, how do you respond to Ms. Gray's argument? She's looking, I guess it's the language of 1C, which is at ER 38, where it uses the present tense saying Fortas provides coverage for medically necessary replacement stock. So what's your answer to her argument that that's an ongoing obligation? Well, it's an acknowledgement, which is exactly what it says it is, that the policy does provide coverage for these services. It is not a promise to pay them in the future. As the Court has recognized, there are lots of things that could happen that would result in them not paying, including one of the things that happened in 2002 is that by then her employer was providing her with some additional coverage, which became the primary insurer. And so under the terms of the policy that relates to coinsurance, Fortas was the secondary insurer and only had to pay like $5,000 of the $11,000 claim. But all of that comes under the insurance policy. The promise to pay is in the insurance policy. The deductible is in the insurance policy. The requirement for medical necessity is in the insurance policy, although I admit it was also mentioned in the settlement agreement. The copayment provisions are in the insurance policy. The fact that you have to pay the premiums in order to continue to have any right is in the insurance policy. The obligation we sued upon in 2002 arises from the insurance policy. Counsel, have the parties made any effort to take advantage of our mediation services at this court for this appeal? There was discussion about mediation. And I have to admit that my partner did that. And we didn't get very far. Okay. And I think it was because of the status of the state court case because I think that was about the time they got summary judgment on our repudiation claim, and that was going up to the Supreme Court. I've probably said enough. You obviously understand the case. There's a real temptation to talk about the complaints about the letter that my partner wrote in which they attempt to shift the burden to do their own investigation to our law firm, to my partner. Montana law is very clear. An insurance company cannot refuse to pay a claim without going through and without conducting a thorough investigation based upon all available facts. Four times in eight years, claims for these SOCMA replacements came up. Four times they were denied. Actually, if you look through the appeals process, nine times they were denied. Every time, that's in their own files. And every time they continue to deny them. So the status on the state court case now is that your client lost in the state court and that's on appeal? On the repudiation claim, yes. Okay. Is there anything else pending in the state court? No. We're waiting for the Supreme Court to decide. It's been briefed. The court has belatedly acknowledged that they have to pay for this? They did, in fact, pay for it. So you still have a claim like for bad faith or unfair trade practice or whatever? Exactly. The state unfair trade practices claims. And we have. And as fairly as I can say it is that if every single time you have a claim, they first deny it and then when you put their feet to the fire, they acknowledge that it has always been covered and they'll pay it. At what point do you have a repudiation? I mean, do you have to do this every two years for the rest of your life or do you get to say to a jury, have they repudiated? If we affirm the district courts, then you're in the state court waiting for your appeal. Exactly. But if we reverse the district court and you're back in the federal district court here simultaneously with your appeal, can you assert your unfair trade practice claim there? Yes, we can. And don't think that didn't cross my mind as I was driving across Washington yesterday saying, you know, would we be better off? So you could do that, but it's state law, and you'd rather have it reviewed in state court, I guess. It's just a matter of what's the truth and what's the law. There was never – I was involved in – I helped settle the 1999 case and the 2002 case. I know that we never said we're going to set this up so that the federal district courts have exclusive jurisdiction over any violation of this insurance contract in the future. We didn't do that. Fortas didn't do that. The district court didn't do that. And we all knew that. That's why it was so easy for Judge Shanstrom to say that's not what we did. And that's who knows better than anyone else. If you have other questions, I won't run off at the mouth anymore. You always get great arguments from Montana lawyers, and I always appreciate it. Thank you very much. I'll just keep it to myself. I know Judge Fragerson has a story about a bridge there in Montana. He won't try to sell it to you. It's already sold. Can I just say one thing? Sure. This is what – you asked a question about why we didn't remove in the first place. Unfortunately, the complaint is not as clear as it could be. Nothing in this case has been as clear as it could be, so I'm certainly not putting any blame on Mr. Cousins. But they did say this, and this is what then triggered us coming to federal court. In their brief in opposition to a motion for partial summary judgment, and this is on page 10 of our opening brief, this is what they said to Judge Baugh, who was confused. So there is no confusion. The Loraines will once again recite each and every claim they assert in this case. They seek, and then in paragraph 2 they say, damages caused by Fortas' breach of the December 1999 settlement agreement and release when it denied the claim for the replacement socket in October 2002. We thanked them for clarifying, because it wasn't clear that they were suing in State court for breach of the settlement agreement, and then it became clear. And that's when we said, whoa, there's exclusive Federal jurisdiction over this issue, everything else is a tag-along, and this should be decided in Federal court where the initial settlement occurred. And that's been our point all along. It's a pretty clear question of ancillary subject matter jurisdiction as the Supreme Court decided the issue back in 1994. This is a case where the magic language is in the dismissal. It's in the Judge Anderson said, I will retain jurisdiction over questions of enforcement of the settlement agreement, and neither party objected to that. That was the understanding of the parties, and that's what happened. That's what they say their case is about, and so it should be in Federal court. And that's our position on it. Thank you, Your Honors, unless you have any further questions. Thank you. Have a good trip home. And we'll come to the final matter, Brooks v. Foster. Thank you.
judges: Pregerson, Graber, Gould